5-0-5-3-3, United States v. Lazaro Hernandez-Adame. We'll hear from Ms. Stillinger first. May it please the Court, Counsel. Lazaro Hernandez crossed from Mexico into the United States at a port of entry. He did not evade or elude inspection, but he rather sought detention from immigration officials at the port of entry. Our defense at trial was that he was never free from official restraint. So the facts of his case are very unusual. His motivations and what he did were very unusual. But this concept arises in many more common contexts. And I think it would be a fair characterization to say that the district courts are asking for clarification from this Court on the doctrine of official restraint. So in the Fifth Circuit, and honestly the reason I saw this as a defense, because it's in the notes to the Pattern Jury Instructions, citing Morales-Palacios, the 2004 case where this Court said actual reentry requires freedom from official restraint. And I realize commentary in the Pattern Jury Instructions is not authoritative, but that is what the case said. Although that was not the point exactly being decided in that case. You could perhaps say it was dicta in that case. That, the concept I guess was next mentioned in Palomar's Villamar, which was the 2011 case. Now that's an unpublished case, but there are very few cases that even talk about this concept. So the Palomar's Villamar case says we just don't have any cases that detail the concept of official restraint in the Fifth Circuit. So I would say it's still fair to say that the Court at that time is saying we do have this doctrine, we're just the limits, the parameters of it are not really detailed, not really explicit out there. But then we have the Rojas case, the 2014 case, and that case says although we have mentioned the official restraint doctrine, we have never explicitly adopted the doctrine. Now that was not the issue being decided in that case either. Right. We have alluded to the concept. We have mentioned that it was required. We have said we haven't adopted it. We have written the pattern jury as a comment. Can it be reversible error under those circumstances not to include it as a jury instruction? I think that it is, because here's the thing. The instruction that was requested was a very simple statement. Actual reentry requires presence in the United States and freedom from official restraint. It was a very simple statement that actually Morales Palacios says that, this Court said that. So I think it was a correct instruction. The judges, at the end of the first day of trial, and this was in the context of a Rule 29 motion, and I'm not arguing, of course, sufficiency of the evidence, but in the context of the Rule 29 motion, Judge Guadarrama said that's a question for the jury. Official restraint is a question for the jury. So he seemed to believe that that should go to the jury. The next day, though, and I think he had read that district court decision out of New Mexico, and perhaps from my perspective read it a little bit wrong, but he said, well, Mr. Hernandez wasn't here under any kind of parole. He said two things, really. Judge Guadarrama, I think, said two reasons that he did not include the instruction, or even allow me to argue it. One is that there was no parole, which is really not applicable in this context. I think there was discussion in that New Mexico case about the historical background of official restraint coming out of immigration context. But this person wasn't paroled until the United States. No, no, he was not. Not that circumstance. No, it is not, and really. It's an unusual circumstance that he would show up and say, here I am. Please take me. I assume that that's because there was a perception that people were going to be subsequently released and provided for or something. It seems unusual. Go ahead. Actually, for Mr. Hernandez, it was not. That's the more common context that it happens is when somebody is seeking asylum, maybe, and they come down to the, not necessarily the port of entry, but maybe come down to the river, come to the border and say, hey, Mr. Border Patrol agent, we'd like you to take us into custody because we want to make an asylum claim. That's the much more common context. This had to do with the fact that Mr. Hernandez believed that his legal permanent residence status had been wrongfully taken away years prior. And he believed that he needed to be physically present in the United States to reopen. Challenge his permanent residence. Yes, to reopen that. Yes. He didn't need to be because he could have hired an immigration lawyer from Mexico, but that was his belief. And he testified and he stated that was his belief and that's why he was doing this. Now has he hindered his ability to achieve that goal? Actually, not. Because it really goes back to, I mean, and interesting is the Ninth Circuit, there was a case that came out of the Ninth Circuit that did find that the conviction used to deny him his legal permanent residence rather than take it away should not have been used. And that came up after this even happened. He didn't even realize it, that he actually had a really good basis for reopening his removal proceedings. But that's neither here nor there. I'm sorry. I guess you said just a second ago that you were prohibited from arguing this to the jury.  So it's not just that you didn't get an instruction. You were forbidden from raising this issue at all. Sometimes they'll say, I'm not going to give you an instruction, but you're free to argue whatever you want and make your points. That's a very common thing that a judge will do when there's not clear whether they should do an instruction or something. Correct. But in this case, Judge Guadarrama said you can't argue it because then you'll be arguing outside of the instructions. And I just want you to make it real clear to me, what is it you're claiming you were not allowed to argue? I was not allowed to argue that he was seeking, my defense, and I said this in opening statement, he was seeking to go into custody. In opening statement, I didn't use the terminology official restraint. I just said that's different. When you come over seeking to go into custody, that's different. That's not different from an illegal reentry. He's not seeking to be free in the country roaming around.  He's seeking specifically to go into custody. Correct. And so that's against the statute. The statute casts some language. What is the language that's at issue? The language that's at issue, well, it's if he, the language that I, do you mean what I proposed in the instruction or? No, I'm asking why do you believe that's different? We say it's factually different, but why, we would have to say it's statutorily different. Well, and I'm sorry, let me digress just a moment. This is the other reason, because I didn't finish saying the other reason Judge Guadarrama stated for denying my instruction. There was one he said, he thought I had something, my guy had to have a parole, which I think was just not applicable. The second thing he said is, it's not in the statute. I don't see anything about official restraint in the statute, so I'm not giving that instruction. But, so it's not referenced in the statute. The statute just says if you enter or you're found in or you attempt to enter, and then all these other conditions when you, you know, aren't authorized and you've been previously deported. So it just talks about entry. Here's the things that I think official restraint must apply because we think about a person who, for instance, is extradited from Mexico. Someone who is brought from Mexico against their will in custody and they're brought over here, they're certainly not violating 1326 because they're in custody the entire time they come over here. And I'm assuming, obviously, the person meets the other qualifications for 1326, that they've been previously removed, they don't have any permission, et cetera. And we know if they are brought here against their will in custody, that cannot be a violation. The other way this concept arises often is when people, well, the international boundary is actually at the top in El Paso. It's at the top of the bridge between Mexico and the United States. So, literally, you're in the United States once you pass the top of the arc of the bridge. But that's not considered an illegal entry at that point in time because you haven't gotten away from the official entry section. And that's our argument. And I will tell you, factually, this was very close. But because Mr. Hernandez had just passed the inspectors, it was a very close call. And he said, I had to do this because they wouldn't take me into custody at the inspection point. They wouldn't, I said, take me into custody. They wouldn't. So I just ran past there and said, please. And the video shows he lifts his arms and says, I'm here. The agent that approaches him says the first thing he says is, I want to go into custody. So it was a close case, but that's the kind of thing that should go to a jury to decide. The two best things that you have are the pattern discussion here and the Villanueva case. It says that federal courts have recognized since 1908 that entering the United States requires more than physical presence. It requires an alien to cross the United States border-free from official restraint. Right. And I think this court most recently said that, well, it's Morales Palacios, the 2004 case, which is the one cited in the pattern jury instruction notes. Okay. But the free from official restraint is in the 2005 case as well. Yes. Yes. Yes. So we have in our case law this concept. I believe that we do. And honestly, but it's confusing because Rojas, the 2014 case, this court says we've never explicitly adopted the doctrine. So I don't know. But the 2005 case is a published case. Yes, it is. Well, the Rojas, the 2014, I mean, I don't want to argue against my position here, but the Rojas case from 2014 is also a published case. Yeah. I mean, but it's not. We have a rule of orderliness. Yes. Which, that's a friendly question. A rule of orderliness means the earlier case controls unless we've gone on bonk or unless the Supreme Court or the statutory, the Congress has done something different. You're right. And honestly, I just think Rojas, maybe I didn't understand the, exactly how the, what was meant. And I think that what the unpublished case is saying is that it's just never really been defined. The application or the limits of it haven't been explained. But I think we do have that doctrine. And Your Honor asking can it be reversible error, then I believe that it can be because I asked for that one sentence, which is the law stated by this court. I provided it to the court. I provided authority for it. The judge did not give it on two reasons, which were not valid reasons. One, that it's not written into the statute. And two, that there was, that my client didn't have a parole, which is a concept that I think just did not apply in this case. Are you also, though, specifically appealing that you couldn't argue this to the jury, not just that you didn't get the instruction but that you were forbidden from arguing? And where in the record did the court say, be quiet, don't say that, you can't say that? Because I have in the record where he said you can argue it to the jury.  He said it. He said, oh, you can just argue that to the jury. So. And then, but you're telling me there was a reversal, of course, on that next day when it came in after having read the Gasper whatever case. Yes. So it's mentioned on the bottom of page 11 of my opening brief. But I was arguing, I did not use the term official restraint, but I argued, and this is in quotes, entering the country to get to the first person you can find that will take you into custody is not illegal entry. That's what I argued. And it was very, I mean, I was trying to. The government said it wasn't a defense, and the defense objected. And that objection was sustained? The court did not rule on the objection. The court did not rule on the objection, but said to refer the instructions, which would not have contained that, and so it would have sent some sort of indication that you were outside the lines. Yes, exactly. So it was not, it was sent a clear signal that what you were saying was not accurate. Correct. That's how I felt about it, yes. I mean, I think that that's correct. I mean, I'm not, yeah. Yeah. So I do think, just to get back to it being reversible error, I do think that it's important that at the end of the first day of trial, the judge said this is a jury question, and he seemed to be on board, whether he gave me the instruction or not, or just allowed me to argue it. But unfortunately, when it came time, he did not. Can you tell us why we're, is this case moot in any way? What's the status of this case? Well, my client has served his sentence, Your Honor. He's served his sentence. Why is it just not getting to us? I was trying to figure that out. If he's already served his sentence, and I don't know why we're hearing it now. Why didn't it come to us quicker? That's a good question, Your Honor. I mean, I'm I couldn't figure it out. Yeah, I can't think of the timeline exactly off the top of my head. I mean, it may have Okay, so is it moot? I don't believe it's Does it matter because it's a conviction on his record? I mean, realistic for my client, it doesn't actually make much difference because he's served his sentence. But I don't think it's moot. It's a felony conviction on his record, and, you know, if he were ever facing any kind of consequences in this country, again, a felony conviction, yes, it has consequences for him. And I think my current time is up, so I will Okay, thank you. I'll be back. Thank you. Thank you. We'll hear you on rebuttal. Okay. Counsel? May it please the Court, Stephanie Kenyard for the United States. The district court did not abuse its discretion in this case in the manner in which it instructed the jury. It's undisputed that the instruction that was actually given, which matched the pattern jury instruction exactly, is a correct statement of the law. And this court was clear in Rojas in 2014 that this court has not adopted nor has it ever defined the official restraint doctrine. So the cases in which the official restraint doctrine has been mentioned by this court, where this court has done it in three published cases and then Rojas, Cardenas-Alvarez, Angeles-Mascote, and Morales-Palacios. And in all three of those cases, the official restraint doctrine wasn't actually at issue. So Villanueva was not a 1326 case. It was a 1324. It didn't turn on the official restraint doctrine. What the court did there is in a footnote. It noted that the Ninth Circuit's definition of official restraint includes the constant surveillance doctrine. It says entry requires an alien to cross the United States border free from official restraint. That's a pretty free from official restraint. That's required. But I don't, even in that case, there was no parameter that was given on what official restraint would mean. Right? The only discussion of where official restraint would be applicable is dropping a quick footnote that tells us what the Ninth Circuit thinks. But this court's- If we haven't ruled it out, you should be able to argue it. So I think that where this case falls apart, though, is that there was no instruction that was ever offered that would have provided meaningful guidance to the jury. And in this case, we've had three different theories of official restraint that have been offered as why official restraint would even apply to the facts of this case. And all three of them fall. And I'd like to go through the three of those. I don't know that you have to have an instruction. You should just be able to argue about official restraint to the jury. And that was thwarted. Well, I think that you would – you need to provide guidance to the jury. And this is really where things- They offer an instruction on official restraint. Or if official restraint is going to be brought up. I'm just asking if the defense offered an instruction on it. So what was offered was the following. Actual reentry requires physical presence in the United States and freedom from official restraint. That's an instruction. It is. But when it came at the jury charge conference, the judge asked, is this really a doctrine that arises in parole cases? And the defense says- It wasn't a parole case. It wasn't a parole case. And the defense says, yes, that's the origin of it. But we think we can still argue it. And so the district court asked, well, what does it mean? What is your definition? And this is all at pages 523 to 525 of the record. And the defense responded, plain and simple, there's not. So district court pressed more, how do I know what official restraint means? And the defense said, quote, you don't know. But I think it's a concept that should go to the jury. I mean, maybe they have to figure out what official restraint is, to which Judge Guadarrama said, but if this is a concept that the defense cannot define, that the government has not defined, and that I cannot define, then I don't have anything to give to the jury. But you don't have to have an actual instruction to give a jury in order to let somebody argue that that's a defense. Well, I do think that an instruction, if we are going to be asking the jury to wrestle with a concept, and the concept we are no longer using the common sense definition of restraint, instead we've got this theory about intent, then the jury does need guidance. And that's what this court talks about in United States v. CESA, that if what you have is you are no longer going with a theory that is just common sense for the jury, the jury needs some kind of guidance. And here the defendant told the district court outright that it had no guidance to offer whatsoever to the jury. Well, actually the CA pattern instruction defines what is meant for an alien to enter, and if it would have just said that, that would have been helpful. The pattern instruction actual reentry requires physical presence in the United States and freedom from official restraint? Yes, if it would say that. And I think that there Judge Guadarrama wanted to provide some sort of guidance so the jury would have a concept of what official restraint means. But it said it. The pattern instruction said it requires that and freedom from official restraint. Right, so if that had just been in there, what's in the pattern, that would have been helpful. So it's not that he was in the dark or that you all were all in the dark, not trying to single out the court who's trying to do their best in the circumstances of the trial. There was the instruction in the pattern, the definition of the word, what it means to enter. It gives the definition of entry, but it does so by using a technical concept, official restraint. But it's better than nothing, and it's in the pattern. I don't think it's better than nothing if it's going to leave the jury confused, but in any event, I think even if we were to accept that this instruction was a proper way to instruct on official restraint, I think then the problem we run into is that there was no theory and no evidence on which official restraint could be found. And it is very clear that in order for there to be reversible error for failing to give a requested instruction, the restriction has to have an evidentiary basis in the record that will lead to acquittal. And here I think one problem we have is we've had three, there are three shifting theories of official restraint that we have seen throughout this litigation. So when the defense initially offered an instruction on official restraint, it did define official restraint. On page 165 of the record where the defense put in its proposed instruction, the first sentence came from the pattern jury instruction, actual reentry requires physical presence in the United States and freedom from official restraint. Official restraint may take the form of constant governmental surveillance for the purposes of this instruction. So the defense understood it needed to give guidance on official restraint. It offered constant governmental. It was absolutely under constant government thing of where he was. But they withdrew that theory. So that's at page 518 and 19 of the record during the jury charge conference, the defense said, I know I have an obligation to present a correct statement of the law to the court and therefore withdrew the second sentence. Constant governmental surveillance may be the law in the Ninth Circuit. The defense has not asked this circuit to take it. And, in fact, on appeal, on page 2 of its reply brief, the defense outright says, we are not relying on governmental surveillance. So the only— They don't even need surveillance because he's under physical restraint. So I think that that is— He was in physical restraint, which is the highest level of official restraint. It's not just surveillance. It's one-upped from surveillance or two-upped maybe. I think that there the defense runs into the problem of the record that it created at trial. And so this idea of physical containment, I would call it the third theory because it's really only been presented on appeal. It was not the argument below. So you tell me he was not in physical— He was not. He jumped the turnstile. He ran 30 yards. He chose to stop himself. He stopped at the place. He did. He chose to stop because he had to wait for somebody to come restrain him. He was wanting to be restrained with all of his might. That's the facts of the case. It's undisputed, isn't it? It is. And I think that that actually goes to the second theory. And if I may, the second theory is one of you are officially restrained because you intended to be taken into custody. But it's also he is. He is as restrained as he can possibly be. But he isn't. He runs. He stops. He runs to the restraint. But he even has to wait for them. Well, the fact that they're slow is not on him. And they might not be slow. They might have other people. So they are in a different— He's not ever trying to evade detention. He is not. But in this circuit, entry is a general intent crime, not a specific intent crime. And so the— In this circuit, entry is free from official restraint. Right, but free from official restraint. I would posit that he was not restrained. But in any event, the argument that— The jury should have been able to determine that. And the jury was able to. And the jury was told it—she was told she couldn't argue that. So she was— Maybe this—the judge said, maybe this will help him in the immigration thing, but on the criminal side, all we're here to determine whether or not this individual is an alien, whether he had been previously deported, and then whether he entered or not, which he's admitting the part of entry that requires free from official restraint in the pattern. I'm sorry. Could you read that again? And then whether he entered or was found in the United States and that he didn't get permission. That's it. That's all we're here to determine. And she said, I understand. I respectfully disagree, but I understand the court's position. And then he says that he understands that he could be wrong, and I hope you appeal. But she asks specifically—let me see. If I could raise this other issue on this. I plan to make an argument to the jury that he wasn't trying to get himself out of custody. He was trying to get himself into custody, and that doesn't establish an illegal reentry. I want to argue that before the jury. I'm going to make that argument. I realize that the jury won't be instructed that's a defense, but I also don't think the government should be able to object that's not a defense, because I understand what the court is saying. We don't really. It's not clear whether it is or not, so I want to preempt that. The court says for the purposes of this trial, I am saying that it is not. So he comes down and says it is not a defense. He does, but then to— And then he says, so that would be outside the charge, and it would be objectionable. And then he says, see, unfortunately, as sad as this case is, the avenue certainly isn't through the criminal courts to where he wants to go. It's not. And so he shuts it down, so she cannot argue that he was always both intending and physically restrained. She can't argue any version of official restraint to the jury, because the court has said it's objectionable. And she does try, because he's changed his mind a couple times, and she thinks, well, maybe she can get it in. And that's a normal thing. A lawyer is going to try to get in on the day it's actually relevant. But immediately shut down. But he ends that colloquy by telling her, present the case, make your case to the jury so that we've got everything on the record the way that you would have argued the case. And in the closing statement at pages 551 to 552, she argues, so when he jumps a turnstile, is that an illegal entry? I mean, maybe if he kept running. That's not what happened. He stops. You can tell he's waving his arms, calling to the officers. And the officers said, Hernandez told them, I want to be arrested. Is that illegally entering our country to get to the first person you can find that will take you into custody? I don't think so. The judge told you to use your common sense, to use reason and common sense. It's up to you, the jury, to decide whether you think this was an illegal entry. She's doing the best she can when she's been shut down. And the judge has already told the jury that it's not going to do anything on that objection. And that's sending the thing that we're only going to look at the patterns. She's doing the best she can under the circumstances where she's not allowed technically to argue that. I understand that. I do understand that. And doing a yeoman's job, I mean, phenomenal job of trying to get that argument out there, even though she's not supposed to, but with saying in the lines. But I think then you run into two problems. I think if this court says there is official restraint because you got out of custody, you jumped, you ran, but your plan was to get back into custody. He wasn't in custody at the time he was jumping. He was going towards the custody. Right. He wasn't officially restrained. And he runs, and then he has to wait. He runs to custody as fast as he can. I think that one, that the concern here is the Ninth Circuit has actually accepted this type of argument in the attempted entry space. Well, we certainly need to deal with this because we can't let this continue to go on and on with this uncertainty between Rojas and the pattern and these cases. So what would the government propose is the correct rule on this? Because we're going to have to set a rule regardless of whether or not. The government's position here is that official restraint is, I think the Ninth Circuit experience has shown, official restraint can become very tricky, and it is very, very fact-dependent. And the government's position in this case is that there is no theory that has been presented to this court that it can adopt on official restraint. I'm sorry. We have to say what is official restraint. Assuming we have argument that we have to say either there is no official restraint. That is the government. Well, we can't really do that because we already have cases saying that there are, and we are not the en banc court. So what is the government's, I'm sure you have a narrow theory of official restraint that you're prepared to present to the court because you've thought about this quite a bit. Yes. What is the narrow theory of official restraint that the government would advocate? The government does not have, does not think there is any theory that can work in this case. Okay. We have to have a theory of official restraint so that this is not an issue for the pattern for next time. And so we have to do something here. So here the defendant was not in custody. He was not physically restrained. And so the government's position would be. Physically restrained in custody is the test. So I think physical restraint would be the test, yes. Physical restraint, okay. I think they argued they were in physical restraint. But I think then we get into the third problem. The argument that was presented at trial was he could have kept going. He stopped because he wanted to be constrained. Now the theory presented on appeal is he always remained in a confined and occupied area. That's the argument made, the opening brief pages 15 and 16 and the reply brief page 2. And I think that there the problem is that because the theory at trial was he could have kept going, he chose not to. You shouldn't count that as an entry. The record forecloses this physical restraint theory. And the part of the record that I would point you to. So at pages 4. What about winning the case? And we're talking about what is the rule going forward. But I think that this court did it right in Rojas when it said when we have a case where the theory of official restraint isn't supported by the record, this is not the time and place to define official restraint for all future cases. Well, this is about as official restraint hypothetical that you could get. But. This is about as golden of a. Your Honor, if I may, if I may, the evidence at trial, right, the argument here is that the defendant remained in a confined and occupied area. But at trial, the defendant was asked, was it ever a thought you had that you were going to try and run all the way into El Paso? And the defendant said, no, but it's just right there. If that was my intent, I would have kept running. And then defense counsel elicited, got the government witness, Officer Valenzuela, to agree with all of these statements that I'm going to read about the area in which he stopped. It was an open area. If I just wanted to go to this area from the courthouse in El Paso, I could just walk down the street into that area. There's no gate, no nothing that stops me. Once you're in this area, you're clear. The people that are coming out of this building have been cleared to enter the U.S. And all of that testimony is at page 416 of the record. And so, you know, in this case, we would be saying that the district court clearly abused its discretion because it didn't give an instruction on official restraint because of a physical constraint theory that wasn't presented to the district court. And the defendant built their entire case at trial by proving the opposite, by proving a specific intent theory of entry that this court has rejected and Morales-Palacios. And by showing over and over again, he could have just kept going. He wasn't constrained, but it wasn't an entry because he waited until someone could come restrain him. So the government would urge this court to say the official restraint doctrine has not yet been adopted or defined. In this case, presents no opportunity to do so. The two theories that were presented at trial, one of governmental surveillance and one of specific intent, have both been waived. One was withdrawn at trial. The other one has been abandoned on appeal. And the third theory of physical constraint is directly contrary to the record that the defense built at trial. Okay. And what is the, what should we, if we are going to adopt a definition of official restraint, what is the government's version of that? I really urge you not to divide it in a case like this. I mean, are you fighting the question? You've said that many times. I understand you think the facts don't support it. Understood. This is your opportunity. There would need to be a physical restraint. A physical restraint. On the movement. No intent standard at all, but just physical restraint. Correct. And this court in Morales-Palacio made it clear that all of the crimes under 1326 are general intent. They are not specific intent, which is another way in which this circuit differs from the Ninth Circuit, which, yes, Your Honor. Well, intent matters to me. Yes. But you're not saying no consideration of intent at all. You're saying no specific intent. Right. No specific intent. It's a general intent crime. There is knowing, right? It has to be a knowing entry. But, yes, no specific intent. Knowing entry that is not physically restrained. Yes, so I think what I would point the court to is there are, of course, there's the parole universe of cases. I'm out of time, Your Honor. You can answer the question. So I want to flag, you know, the universes of cases that the defense has pointed to. There are the parole cases. There are cases where someone is still actually in custody. For example, the Second Circuit has had a case where somebody was brought in handcuffs or where somebody is still actually in customs and has no. People would definitely. So I think that courts have held it. But I think, again, this case is striking because it doesn't present any of them. There was an official entry point. There was a barrier, and this defendant jumped it. Please repeat the facts. Thank you. Thank you. I'd like to, I guess, first address why I think the physical constraint definition. Well, actually, I don't know that the court needs to define. I think the court needs to clarify that this doctrine exists. When I initially submitted my proposed instruction, I did have that second sentence about surveillance. But then I realized that that really wasn't going to fly. But I did not submit that second sentence. You withdrew that. I withdrew the second sentence, yes, Your Honor. I did. And I just limited it to the one sentence that this court has approved. And the one sentence was specifically rejected on the record? I'm sorry, ma'am? The one sentence was specifically rejected on the record? Yes. The sentence that I requested was actual reentry requires presence in the United States and freedom from official restraint. I'm a little confused. We're not talking about the sentence you withdrew in response? Oh, no, no, no. Yes. The sentence I just read was the first sentence which I kept, which ended up being my only requested instruction. And it was denied? And it was denied, yes, sir. So the second sentence I didn't offer as a definition. I mean, it's not a definition. It was there's Ninth Circuit case law about surveillance being a form of official restraint. And I was going for it and realized I shouldn't go that far. And so that's why I withdrew it. But I don't know that it needs to be defined. I would. Well, do you think intent matters with regard to official restraint? I don't know that intent. I mean, factually, a jury has to make a decision. I mean, I guess here's the thing. My client, when he crossed over and he waves his arms and says, you know, come arrest me, I want to be arrested, the government's theory was, no, that the agent ran up so fast that my client didn't have a chance to get away. That was one of the things that they were saying is that he could have gone. And one of the reasons I brought all that out into the record about it was open, he could have run, is to enhance his credibility, honestly, as to what he was doing. The fact, and I'm sorry, I'm going a little astray from your question, but the fact that he could have physically. Thank you. Excuse me. The fact that when he crossed and crossed over that turnstile, that he physically, if there was nobody there, I mean, if everybody was not working that day, he could have kept walking. There was no physical barrier to walk into El Paso. But that's true at a great length of the border. I mean, I don't think physical constraints are what define official restraint. And it cannot be that way because, for instance, one of the first things I talked about is when somebody crosses the bridge, they are in a physical area that is dominated by the government. They're not in cuffs, but you don't charge them with illegal reentry when they have crossed the top of the arc of the bridge. I guess I'm trying to figure out how it would be fair to a jury to say we, the lawyers in the court, aren't sure what it means, but you, jurors, need to make a determination about what it is. Sure. I hate to do this. I mean, there is a definition that I kind of like that is in a Second Circuit case. I didn't cite it in my brief, but if you— So you're agreeing that if you're going to ask the jury to make a finding about whether or not official restraint exists, you need to tell them what it is. I don't actually agree. I think you could let them make that determination. I think— You argue they could do it with common sense. Yes. That's what I think. So we don't know what it is, but we're waiting on you to tell us. And you say that to a jury. When I'm going to offer you any definition— I mean, it would allow both sides to argue. You just determine what it is in this case. It would allow both sides to argue what they think would make it work. Because I don't think you're going to find a definite—well, if I could—and I didn't cite this case, and it's not authority in this court, but this is a definition that kind of, I think, works. Freedom from official restraint means the alien is no longer under constraint emanating from the government that would otherwise prevent her from physically passing on. Now, that is not just simply a physical restraint like in custody, but it's—I mean, honestly, that's common sense. I mean, official restraint means just like there's some official restraining you from passing through. I don't think it's that complicated, honestly. I think a jury could use their common sense to make that determination. Common sense wouldn't tell me that having me under surveillance equals physical restraint. I agree. That's why I left the surveillance part out of it. We're not doing surveillance here. This is not about surveillance. No, it's not. This is very different than Rojas, where the person is in the United States on a bus going—leaving. That's a completely different, opposite scenario. Yes. Rojas. Yes. Yes, it is completely different, and I'm not sure why the Rojas court took it upon themselves. The Rojas court does not discuss the universe of the cases that we had talked about official restraint. No. I mean, honestly— It says—oh, we've mentioned it a couple of times. So it doesn't—it says we haven't done it, but it doesn't actually grapple with some of the cases where we perhaps had done it. Right, because that was the fellow going southbound, leaving the country, and they're like, it doesn't apply when you're leaving. They were doing with the word enter, not the word official restraint. Correct. Okay. I think it would be appropriate in this case for each side to have a chance to do a 28-J on a definition of official restraint within seven days. Okay. Thank you. Thank you. We have your argument. We note that your court appointed and appreciate your argument, which was exemplary on behalf of your client. Your argument was also exemplary. Thank you very much for your service to the government. Thank you. And the case is submitted.